# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ERIC HODKIEWICZ,**

    **Petitioner,**

v.                               Case No. 18-CV-900

**REED RICHARDSON,**

    **Respondent.**

## DECISION AND ORDER
## DENYING MOTION FOR RELIEF FROM JUDGMENT

Eric Hodkiewicz seeks reconsideration of the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Docket # 23.) In a decision dated September 24, 2019, I found that the decision of the Wisconsin Court of Appeals affirming Hodkiewicz's conviction and sentence was not contrary to, and did not involve an unreasonable application of, clearly established federal law. (Docket # 21.) I also denied Hodkiewicz a certificate of appealability. (*Id.* at 32–32.) For the reasons below, I will deny Hodkiewicz's motion to reconsider, but grant him a certificate of appealability on his ineffective assistance of counsel claim.

## LEGAL STANDARD

A party may move the court for reconsideration of a judgment within twenty-eight days following the entry of the judgment. Fed. R. Civ. P. 59(e), 60(b). A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l*

*Fidelity Ins. Co.*, 561 F. Supp. 656 (N.D. Ill. 1982), *aff'd* 736 F.2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Apart from manifest errors of law, "reconsideration is not for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Whether to grant a motion for reconsideration "is left to the discretion of the district court." *Id.*

**ANALYSIS**

Hodkiewicz argues for reconsideration on the basis that my decision made erroneous assumptions of fact and overlooked relevant considerations, and overlooked controlling law regarding procedural default, denial of his confrontation rights, denial of due process, ineffective assistance of counsel, the cumulative prejudicial effect of counsel's errors, and denial of a certificate of appealability. (Docket # 23.)

1. *Background*

Hodkiewicz points out that the "Background" section of my decision neglected to mention that Hodkiewicz's defense relied not just on S.P.'s motives to falsely accuse him and the lack of eyewitnesses and physical evidence linking him to the crimes, but also on Hodkiewicz's own testimony. (Docket # 23 at 2.) Hodkiewicz asserts that this testimony was corroborated by evidence suggesting that Hodkiewicz could not have committed many of the acts attributed to him (because he was either in jail, on electronic monitoring, or at home caring for his child). (*Id.*) Hodkiewicz also faults my decision for repeating the state court's misleading characterization of the testimony of Hodkiewicz's father that Hodkiewicz parked

his truck "near the family's home," when in fact Hodkiewicz's father testified that Hodkiewicz had parked his truck *in the shop* near the family's home, and that the officer who had gone looking for Hodkiewicz's truck on the night of one of the incidents admitted that he could not see into the shop and did not look there. (*Id.* at 2–3.) Hodkiewicz does not explain how either of these alleged errors justifies reconsideration, admitting that they "may or may not have impacted [the court's] final decision." (*Id.* at 2.) This falls far short of showing the kind of manifestly erroneous understanding of the facts that would justify reconsideration.

 2. *Procedural Default*

In my decision denying Hodkiewicz's petition, I found that Hodkiewicz's challenges to the admission of hearsay and false evidence were barred by an independent and adequate state procedural ground. (Docket # 21 at 14–16.) I explained that the Wisconsin Court of Appeals found that Hodkiewicz had waived those stand-alone constitutional claims by not objecting at trial, and Hodkiewicz had not shown cause for and prejudice to excuse the default. (*Id.* at 15–16 (citing Docket # 1-2 ¶¶ 20, 48).)

Hodkiewicz argues that the court of appeals did, in fact, address these claims on the merits and relied on the merits in denying them. (Docket # 23 at 3–4.) Hodkiewicz points out that the court of appeals performed a "plain error" analysis of the hearsay claim and determined that the error was harmless, and argues that the plain error analysis constituted a determination on the merits. (*Id.*) Similarly, Hodkiewicz argues that the court of appeals evaluated the merits of the false evidence claim and concluded that the testimony was not in fact false and/or the error was harmless. (*Id.* at 4.) Thus, Hodkiewicz argues that procedural default does not apply.

3

Hodkiewicz has not shown that this court's decision was erroneous. The court of appeals clearly relied on procedural waiver when it stated that "Hodkiewicz concedes his trial attorney did not object to any of this hearsay testimony" (Docket # 1-2 ¶ 20) and then proceeded to review for plain error or ineffective assistance of counsel—two possible exceptions to waiver. Similarly, for the false evidence claim, the court of appeals stated that "Hodkiewicz concedes his trial counsel did not object to Henzel's testimony" and then reviewed for plain error or ineffective assistance of counsel. (*Id.* ¶ 48.) Although the court of appeals could have been even more explicit about its reliance on procedural waiver, it unambiguously conveyed that reliance when it noted the failure to object and reviewed for plain error. *See Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003) (citing *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("We view a state appellate court's review for plain error as the enforcement of a procedural default.")). A state court's review of the merits to determine whether an exception to procedural waiver might apply does not transform the decision into one on the merits. *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (citing *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005); *Rodriguez*, 318 F.3d at 735; *Neal v. Gramley*, 99 F.3d 841, 843–44 (7th Cir. 1996); *Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003)); *see also Rodriguez*, 318 F.3d at 736 ("Although a state court's review of whether an error is 'plain' often entails at least limited review of the merits, that limited review is at most 'entangled' with the merits and certainly not 'entirely dependent on the merits.'") (internal quotations and citations omitted); *Brooks v. Walls*, 279 F.3d 518, 523–24 (7th Cir. 2002) (concluding that "[a] state does not abandon the benefits of [the independent and adequate state ground] doctrine by allowing plain-error review").

The majority of Hodkiewicz's other arguments are premised on the assumption that his hearsay and false evidence claims were not procedurally defaulted. (Docket # 23 at 4–10.) He asserts that the proper standard for prejudice was the "harmless error" standard of *Chapman v. California*, 386 U.S. 18 (1967), rather than the "reasonable probability of a different result" standard for ineffective assistance of counsel claims under *Strickland v. Washington*, 466 U.S. 668 (1984). However, as explained, these claims were procedurally defaulted, so the *Strickland* standard was the appropriate one and Hodkiewicz has identified no error justifying reconsideration.

3. *Ineffective Assistance of Counsel*

Hodkiwiecz argues that the court overlooked facts regarding counsel's failure to introduce evidence to expose the state's attempt to mislead the jury into thinking that Hodkiewicz and his neighbor, Kyle Thorson, had fabricated an alibi long after the alleged "shovel" incident of December 9, 2011. (*Id.* at 8–9.) At trial, Thorson testified that he was with Hodkiewicz on the evening of one of the incidents relevant to the stalking charge. (Docket # 14-16 at 14–19.) On rebuttal, Detective Wade Wudtke testified that Hodkiewicz had not mentioned Thorson a few weeks later when Wudtke and Hodkiewicz had put together a timeline of Hodkiewicz's whereabouts the night of the incident. (Docket # 14-17 at 63–65.) Defense counsel declined to cross-examine Wudtke.

Hodkiewicz argued that his counsel was aware of discovery showing that both Hodkiewicz and Thorson had reported the alibi to police a few days after the incident, and was deficient for not using these prior statements to rebut the inference that they fabricated the alibi after Hodkiewicz's discussion with Wudtke. (Docket # 15 at 25.) The evidence included a signed statement from Hodkiewicz dated December 12, 2011 and a police report

5

dated December 14, 2011 detailing Officer Joe Verbrigghe's interviews with both Hodkiewicz and Thorson, who had both reported spending time together that evening. (Docket # 14-1 at 64–68.) At a hearing on the post-conviction motion, counsel could think of no strategic reason for failing to introduce that evidence. (Docket # 14-20 at 28–34.)

My decision denying relief explained that the Wisconsin Court of Appeals reasonably concluded that Hodkiewicz was not prejudiced by this omission. I explained that "it was not clear that [the evidence] would have been helpful, let alone that it would have affected the outcome of trial." (Docket # 21 at 28.) I explained:

> While it is possible that counsel's attempt to expose the state's allegedly misleading evidence might have helped Hodkiewicz, this is not clearly so. The jury might have concluded that the state had been trying to mislead them, but it also might have been struck by the problems with Thorson's statement. Thorson told police four days after the incident that he saw Hodkiewicz's exterior lights on between 7:00 and 7:30 p.m., that he then exchanged text messages with Hodkiewicz, that he saw the lights on in Hodkiewicz's garage around 9:00 p.m., and that he went over to visit Hodkiewicz around 10:00 p.m. (Docket # 10-4 at 113.) This leaves obvious windows in which Hodkiewicz could have committed the assault. Furthermore, it is inconsistent with Thorson's statement at trial that he spoke with Hodkiewicz from approximately 8:30 p.m. to 10:00 p.m.

(*Id.* at 27–28.) Hodkiewicz argues that the court premised its determination of prejudice on a misunderstanding of Hodkiewicz's argument. (Docket # 23 at 9.) The court understood Hodkiewicz to be arguing that counsel should have introduced the statements themselves, when his argument was that counsel ought merely to have elicited the fact that they existed. (*Id.*)

This argument for reconsideration is premised on the court's alleged error in construing the nuances of a brief; it does not point to any manifest error of fact or law that would justify reconsideration. Furthermore, it would not alter the outcome of my decision. Hodkiewicz has shown neither that the attorney acted deficiently nor that he was prejudiced

6

under *Strickland*. To show deficient performance, Hodkiewicz must show that the acts or omissions "*could not be* the result of professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988) (emphasis added) (citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). Hodkiewicz has not done so, despite counsel's failure to recall any strategic reason for the omission. (Docket # 14-22 at 33–34.) By the time Wudtke testified, defense counsel had already elicited the fact that Thorson had made such a statement, and a reasonable attorney could have thought that it backfired on Hodkiewicz. The defense called Thorson to testify and elicited the fact that two or three days after the incident, police contacted him and questioned him about Hodkiewicz's whereabouts. (Docket # 14-16 at 18–19.) Thorson explained that he told police that he and Hodkiewicz had been caring for their children that evening and that they were together until about 10:00 p.m. (*Id.* at 19.) However, on cross-examination, the prosecution hinted at discrepancies between this account and the police report, indicating that Thorson said he did not speak with Hodkiewicz until 10:00 p.m. (*Id.* at 20–22.) The prosecution also elicited an admission from Thorson that he had not told police that he heard Hodkiewicz come home between 7:30 and 8:00 p.m., but had added that information only at trial. (*Id.*) The prosecutor then elicited testimony from Thorson suggesting that his report to police—the one that stated that he did not speak with Hodkiewicz until 10:00 p.m.—was likely more accurate because his recollection had been fresh then and he found it hard to remember at trial. (*Id.*) Given the vulnerabilities in the alibi, a decision not to redirect the jury's attention to the earlier report could have been the result of professional judgment.

Furthermore, Hodkiewicz has not argued the requisite prejudice. He argues that knowledge that the alibi had been reported earlier would have bolstered his alibi and also

shown jurors that the state was trying to mislead them, making jurors more skeptical of the state. (*Id.*; Docket # 15 at 35.) This is quite possibly so. However, in the context of this trial, it strains the imagination to suppose that this would have changed the outcome. From Thorson's testimony, the jury had already heard that the alibi had been reported earlier to a different officer. Furthermore, while this would have rebutted the inference that Hodkiewicz and Thorson had fabricated the alibi much later, it still would not have explained the alibi's absence from Wudtke's timeline resulting from Hodkiewicz's apparent failure to mention it.

The strongest argument in Hodkiewicz's favor is that proving that Hodkiewicz did not commit this assault could have gone a long way toward discrediting the alleged victim, S.P., who claimed not to have seen the attacker but to have recognized Hodkiewicz's voice. In a trial notable for a total lack of DNA evidence, fingerprints, or any other physical evidence linking Hodkiewicz personally to the crimes, the prosecution's case hinged in large part on the credibility of S.P. If Hodkiewicz could convince the jury that he was with Thorson at the time of the assault, the jury would have to believe that S.P. had either fabricated the events or been mistaken in identifying Hodkiewicz's voice. However, Hodkiewicz has not shown a reasonable likelihood that counsel's introduction of more evidence that the alibi had been reported previously would have convinced the jury that S.P. must have fabricated her testimony or been confused in her identification of Hodkiewicz. Whether or not the alibi was reported earlier did not change the fact that there would have been time enough for Hodkiewicz to converse with Thorson *and* commit the assault. In light of all this, I cannot conclude that there was a reasonable probability of a different outcome had counsel done more to rebut the inference from Wudtke's testimony that the alibi was reported later than it actually was.

8

As for Hodkiewicz's argument that knowing that the alibi had been reported earlier would have caused the jury to conclude that the State was trying to mislead it, I must first deal with Hodkiewicz's contention that AEDPA deference is not owed to the state court on this argument because the state court did not address it. (Docket # 23 at 9.) While it is true that the state court did not address this specific argument, it addressed this claim, and that is enough to make the decision on that claim subject to AEDPA deference. A state court need not address every possible merits argument for AEDPA deference to apply—indeed, AEDPA deference could apply to a claim even if a state gave no reason at all. *See Harrington v. Richter*, 562 U.S. 86, 784–84 (2011) (stating that § 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'") Furthermore, nothing about the potential effect on the jury's perception of the State persuades me to alter my conclusion that the state court's decision on the prejudice prong of Hodkiewicz's ineffective assistance of counsel claim was reasonable. There was nothing obviously untrustworthy about the testimony itself; even Hodkiewicz admitted that he could not recall telling Wudtke about the meeting with Thorson. (Docket # 12-18 at 47–48.) Hammering home the fact that Hodkiewicz and Thorson had reported the conversation earlier would not change the fact that Hodkiewicz made a different report to Wudtke later. Further, the prosecution did not actually argue that Hodkiewicz and Thorson had fabricated the alibi long after the incident—they could not, as Thorson had already testified that he had reported it to police two or three days afterward and Thorson had been questioned about that report.

For all these reasons, even if counsel for Hodkiewicz had clearly conveyed the fact that both Hodkiewicz and Thorson had reported their conversation soon after the alleged

9

incident, the state court was not unreasonable in concluding that a different outcome was not reasonably probable.

### 4. Cumulative Effect of Counsel's Errors

Hodkiewicz argued that the cumulative effect of counsel's errors affected the jury's ability to assess S.P.'s credibility, the undermining of which was central to Hodkiewicz's defense. (Docket # 2 at 26–36.) The court of appeals disposed of this claim cursorily in a footnote after finding Hodkiewicz impermissibly prejudiced on two of the charges, stating that the "claimed errors, whether considered individually or together, do not convince us he is entitled to a new trial on the remaining seven counts." (Docket # 1-2 at 26 n.10.) Despite the lack of reasoning from the court of appeals, I concluded that its determination that the cumulative effect of counsel's errors did not warrant a new trial was not an unreasonable application of or contrary to *Strickland*. (Docket # 21 at 28–29.)

Hodkiewicz argues that the state courts and this court impermissibly evaluated the strength of only one party's evidence. (Docket # 23 at 10 (citing *Holmes v. South Carolina*, 547 U.S. 319, 330 (2006)). However, Hodkiewicz does not identify what other evidence that S.P. lacked credibility the court failed to consider. Certainly, in deciding whether there is a reasonable probability that trial errors changed the outcome, the court must consider all of the evidence. *Cook v. Foster*, 948 F.3d 896, 909 (7th Cir. 2020). "Logically, a verdict weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* (citing *Blackmon v. Williams*, 823 F.3d 1088, 1105 (7th Cir. 2016)). This court meticulously reviewed the entire record, and the decision noted points favoring Hodkiewicz throughout. But it bears remembering that my task was not to make a *de novo* determination of prejudice, but to assess the reasonableness of the court of appeals'

determination. "The bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). Even if I assumed that the court of appeals inappropriately skewed its review of prejudice in favor of S.P.'s credibility without analyzing the contrary evidence, Hodkiewicz had to show that the result was unreasonable—i.e., not among the range of equally plausible outcomes. *See Morgan v. Krenke*, 232 F.3d 562, 565–66 (7th Cir. 2000). To do this, Hodkiewicz had to show that counsel's performance, taken as a whole, seriously undermines confidence in the outcome of the trial.

As I explained in my decision, after a six-day trial with testimony from nearly three dozen witnesses including Hodkiewicz and S.P., the jury convicted Hodkiewicz despite the lack of physical evidence of his involvement and despite his alleged alibis. While the type of errors identified might have made the difference between a verdict of guilty or innocent in a different trial, the state court reasonably concluded that they would not have done so in this trial. There may be a reasonable probability that the alleged errors could or even should have changed the outcome, but it can reasonably be concluded that they would not have.

5. *Certificate of Appealability*

Finally, Hodkiewicz argues that this court should have granted a certificate of appealability. Hodkiewicz asserts that his claims "are far from frivolous or unworthy of consideration." (*Id.* at 11.) I agree. If they had been frivolous or unworthy of consideration, they would have been rejected at the screening stage. The standard for a certificate of appealability is not whether the claims are frivolous, but whether the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rules

11

Governing § 2254 Cases, Rule 11(a). This has been interpreted to mean that a petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner need not show that the appeal will succeed, but he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Miller–El v. Cockrell*, 537 U.S. 322, 337–38 (2003) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

On further review, although the court of appeals' prejudice finding was a reasonable one, I agree with Hodkiewicz that reasonable jurists could debate that conclusion and will grant Hodkiewicz a certificate of appealability on his ineffective assistance of counsel claim.

Hodkiewicz further argues that he is entitled to a certificate of appealability because the court's denial of his double jeopardy claim relied on a Seventh Circuit decision, *Boyd v. Boughton*, 798 F.3d 490 (7th Cir. 2015), that he believes to be erroneous.[1] (Docket # 23 at 11–12.) This court is bound by *Boyd*, so reasonable jurists would not debate that this court properly denied Hodkiewicz's double jeopardy claim. The denial of a certificate of appealability does not, as Hodkiewicz appears to believe (*id.* at 11), deny him the opportunity to raise his objections to *Boyd* in the appellate court. A petitioner who has been denied a certificate of appealability by the district court may request that a circuit court issue the certificate. Fed. R. App. P. 22(b)(1).

## CONCLUSION

Hodkiewicz has not identified any manifest error of law or fact that would prompt me to alter my conclusion that he is not entitled to a writ of habeas corpus under 42 U.S.C. §

---

[1] Hodkiewicz also seeks reconsideration on the ground that the court misstated the holding of a case in an explanatory parenthetical. (Docket # 23 at 12.) The decision did not rely on that case and this is not the kind of "wholesale disregard, misapplication, or failure to recognize controlling precedent" that would justify reconsideration.

2254. However, I will grant Hodkiewicz a certificate of appealability on his ineffective assistance of counsel claim.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the petitioner's Motion for Relief from Judgment (Docket # 23) is **GRANTED IN PART AND DENIED IN PART**. A certificate of appealability shall issue on Hodkiewicz's ineffective assistance of counsel claim.

Dated at Milwaukee, Wisconsin, this 4th day of August, 2020.

BY THE COURT:

*s/ Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge